United States District Court
District of Massachusetts

| | |
|---|---|
| LUIS DIAZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 16-11579-NMG |
| ) | |
| JEREMY DREW, ET AL., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from the alleged mistreatment of pro se plaintiff Luis Diaz ("Diaz" or "plaintiff"), who is currently incarcerated at the Massachusetts Correctional Institution at Cedar Junction in Walpole, Massachusetts ("MCI-Cedar Junction"). Specifically, Diaz claims that defendants, who are various employees of the Massachusetts Department of Correction ("the DOC"), inter alia, beat him, withheld food and toiletries, retaliated against him, wrongly placed him in the Departmental Disciplinary Unit, withheld supplies needed for his legal case and prevented him from getting mental health treatment, all in violation of 42 U.S.C. §§ 1981, 1983 and 1985.

The following motions are pending before the Court:

1) Plaintiff's motion for hearing (Docket No. 27),

2) Plaintiff's motion to appoint counsel (Docket No. 57),

-1-

3) Plaintiff's emergency motion for injunctive relief (Docket No. 45),

4) Plaintiff's motion for injunctive relief to stop starvation (Docket No. 48),

5) Plaintiff's motion for hearing on his motion for injunctive relief (Docket No. 53),

6) Plaintiff's motion for injunctive relief to preserve video footage (Docket No. 64),

7) Defendants' motion for an extension of time to respond to the complaint (Docket No. 51) and

8) Defendants' motion for exemption from Local Rule 7.1(A)(2) (Docket No. 52).

For the reasons that follow, the Court will take plaintiff's motion for injunctive relief to preserve video footage under advisement but will deny his other motions and allow defendants' motions.

## I. Background

Diaz is incarcerated and awaiting trial on state charges at MCI-Cedar Junction. The defendants who have been served are employees of the DOC: the Director of the Departmental Disciplinary Unit (the "DDU") Elena Clodius, Captain William Harold a/k/a Harrold Wilkes, Sergeant Michael Kasprzak and Correction Officers Jeremy Drew, Burns a/k/a William Byrnes and

Matthew Sawash (collectively, "defendants").[1]

The parties offer different versions of the facts. Plaintiff alleges that corrections officers beat him in September, 2015. He asserts that when he decided to file a lawsuit about the beating, prison officials began to retaliate against him by issuing fake disciplinary "tickets". He also claims that he has been denied showers and toiletries and that officers have tampered with his legal documents. He alleges officer misconduct, such as officers telling him to kill himself, making racist and homophobic comments to him, sexually harassing him and desecrating his Muslim hairstyle. He asserts that 1) defendants are starving him, 2) he has been denied due process and 3) he is being held illegally.

According to defendants, plaintiff's version of the facts is delusional. They rely on the affidavit of Michael Rodrigues, the Superintendent of MCI-Cedar Junction, which states that plaintiff receives three meals daily and that Diaz's allegations of officer misconduct have been investigated and determined to be unfounded. Defendants also rely on the affidavit of Mitzi

---

[1] Plaintiff also names as defendants Steven Adam, Julie Flanagan, any officials involved in disciplinary proceedings and John Doe. Those individuals have not been served and thus this Court construes the pending motions as applying only to the served defendants.

Peterson, the DOC's Director of Behavioral Health, which states that Diaz has received adequate psychological treatment.

Plaintiff filed a complaint in August, 2016, alleging that defendants have engaged in actions prohibited by 42 U.S.C. §§ 1981, 1983 and 1985 by violating the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff further claims that defendants have violated Article 12 of the Massachusetts Declaration of Rights.

That same month, Plaintiff moved to proceed in forma pauperis, for the appointment of counsel and for injunctive relief. This Court allowed the motion to proceed in forma pauperis and denied without prejudice the motion to appoint counsel. Plaintiff's motion for injunctive relief was also denied without prejudice because he had not served defendants.

In January, 2017, plaintiff moved for a hearing. In March, 2017, defendants Clodius, Wilkes, Kasprzak, Drew, Byrnes and Sawash were served. The following month, plaintiff moved for emergency injunctive relief, for injunctive relief to stop starvation and for a hearing on his motions for injunctive relief. He also filed a third motion to appoint counsel. Defendants moved for an extension of time to respond to the complaint and for exemption from Local Rule 7.1. At the end of April, plaintiff moved for injunctive relief to preserve video

footage.  This memorandum and order addresses all of the pending motions.

**II. Plaintiff's Motion For A Hearing filed in January, 2017**

In his January, 2017 motion for a hearing, plaintiff seeks to revisit a decision made by United States District Judge Richard Stearns ("Judge Stearns") in a separate action, Luis Diaz v. Milagros Perez, et al., 16-cv-11860-RGS (D. Mass. filed Sept. 12, 2016).  Because this session has no jurisdiction over that early action, the subject motion will be denied as moot.

**III. Plaintiff's Motion to Appoint Counsel**

Because there is no constitutional right to counsel in a civil case and the exceptional circumstances that warrant the appointment of counsel are not present here, the motion to appoint counsel will be denied. King v. Greenblatt, 149 F.3d 9, 14 (1st Cir. 1998).

**IV. Plaintiff's Motions for Preliminary Injunctions and for a Hearing on Injunctive Relief**

**A. Legal Standard**

In order to obtain a preliminary injunction, the moving party must establish 1) a reasonable likelihood of success on the merits, 2) the potential for irreparable harm if the injunction is withheld, 3) a favorable balance of hardships and 4) the effect on the public interest. Jean v. Mass. State Police, 492 F.3d 24, 26-27 (1st Cir. 2007).  Out of those

factors, the likelihood of success on the merits "normally weighs heaviest in the decisional scales." Coquico, Inc. v. Rodriguez-Miranda, 562 F.3d 62, 66 (1st Cir. 2009).

The Court may accept as true "well-pleaded allegations [in the complaint] and uncontroverted affidavits." Rohm & Haas Elec. Materials, LLC v. Elec. Circuits, 759 F. Supp. 2d 110, 114, n.2 (D. Mass. 2010) (quoting Elrod v. Burns, 427 U.S. 347, 350, n.1 (1976)). The Court may also rely on otherwise inadmissible evidence, including hearsay, in deciding a motion for preliminary injunction. See Asseo v. Pan American Grain Co., Inc., 805 F.2d 23, 26 (1st Cir. 1986). Ultimately, the issuance of preliminary injunctive relief is "an extraordinary and drastic remedy that is never awarded as of right." Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8-9 (1st Cir. 2012) (quoting Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011)).

## B. Application

Two of plaintiff's pending motions for injunctive relief request that the Court enjoin defendants from 1) starving him, 2) taking his toiletries, 3) retaliating against him, 4) denying him due process, 5) preventing his access to the Court and 6) various misconduct, such as "psychological torture", insults and sexual harassment. Defendants respond that preliminary injunctive relief is unwarranted because plaintiff's claims are

flatly contradicted by the affidavits of Superintendent Rodrigues and Ms. Peterson.  Defendants further submit that plaintiff's many complaints of officer misconduct have been investigated and found not credible.  Based on the four injunctive relief factors, this Court agrees with defendants.

### 1. Likelihood of Success

Addressing plaintiff's claims seriatim, at this point of the proceedings, he has failed to show that he is likely to succeed on the merits of any of his claims.

First, his claim that he is being starved is directly contradicted by the affidavit of Superintendent Rodrigues.

Second, plaintiff has failed to show that he is likely to succeed on the merits of his claim that he is being denied showers and toiletries, such as razors, underwear and a toothbrush.  To succeed on a claim that prison officials have violated the Eighth Amendment through sub-par prison conditions, a plaintiff must demonstrate 1) that the conditions are objectively inferior and "pos[e] a substantial risk of serious harm" and 2) that the corrections officers involved are deliberately indifferent. Giroux v. Somerset Cty., 178 F.3d 28, 32 (1st Cir. 1999).  Because the conditions alleged do not pose a substantial possibility of serious harm, plaintiff has not shown that he is likely to succeed on the merits of his prison conditions claim. See id.

Third, to establish a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must show that 1) he made a protected statement, 2) he experienced an adverse action and 3) there was a causal connection between the statement and the adverse action. Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). Retaliation claims from incarcerated individuals can be

> easily fabricated[ ] and . . . pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.

Id. (quoting Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003)). Accordingly, such claims must be supported by facts, "not [] the gossamer strands of speculation and surmise." Id. Because the only support that plaintiff provides for his retaliation claim is his speculative conclusions, which are directly contradicted by the affidavit of Superintendent Rodrigues and the records of investigations of his complaints, he has not shown that he is likely to succeed on that claim.

Fourth, plaintiff has not demonstrated that he is likely to succeed on his claim that he was denied due process when he was placed in the DDU. Defendants submit that plaintiff's DDU placement occurred only after a disciplinary hearing that complied with due process requirements. See Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974). Moreover, plaintiff was able to appeal the DDU placement but apparently chose not to do so. Hill

v. Superintendent, Mass. Corr. Inst., Walpole, 466 N.E.2d 818, 821 (Mass. 1984), rev'd on other grounds, 472 U.S. 445, (1985).

Fifth, plaintiff is unlikely to succeed on his claim that officers have been confiscating his pens and legal papers because his numerous filings demonstrate that he has access to the Court and is able to pursue his legal claims. See Lewis v. Casey, 518 U.S. 343, 351 (1996).

Finally, plaintiff's claims of staff misconduct based on his religion, sexual harassment and other mistreatment are serious if true. Yet defendants have submitted records of investigations of plaintiff's complaints that indicate that the allegations of misconduct are simply inaccurate. The conflicting accounts render this Court unable to conclude that plaintiff is likely to succeed on his misconduct claim.

### 2. Other Factors

While the likelihood of the success on the merits provides the "touchstone of the preliminary injunction inquiry," the other three factors also weigh in favor of defendants. Philip Morris, Inc. v. Harshbarger, 159 F.3d 670, 674 (1st Cir. 1998). Plaintiff has not demonstrated that he will be irreparably harmed in the absence of an injunction because the conflicting versions of the facts make it unclear whether plaintiff is being mistreated at all. Moreover, the balance of hardships and the public interest both weigh against issuing a preliminary

injunction because, as defendants point out, the policies that prison officials put into place to ensure that prisons are orderly are entitled to deference and the public interest is served by enabling prison administrators to manage prisons effectively.  Accordingly, plaintiff's emergency motion for injunctive relief, motion for injunctive relief to stop starvation and motion for a hearing will be denied.

### 3. Plaintiff's Motion for Injunctive Relief to Preserve Video Footage

Plaintiff also moves for the Court to order defendants to preserve video evidence from April, 22, 2017.  According to plaintiff, on that day, an officer repeatedly hit his cell door to prevent him from sleeping.  More information is needed before the Court can decide the motion to preserve video footage. Therefore, the Court will take that motion under advisement and defer ruling on it until defendants have answered the following questions:

1) Why has plaintiff been held for such a lengthy period before trial on the pending state charges?

2) What is plaintiff's current weight (as opposed to his weight in April, 2016)?

3) Can the Court be assured that the relevant videos from April, 2017 will be preserved and available if and when they become pertinent to this case?

### 4. **Defendants' Motions**

Finally, defendants' motions for an extension of time to respond to the complaint and for exemption from Local Rule 7.1(A)(2) will be allowed.

### **ORDER**

In accordance with the foregoing,

1) Plaintiff's motion for hearing (Docket No. 27) is **DENIED as moot**,

2) Plaintiff's motions to appoint counsel (Docket No. 57), for injunctive relief (Docket No. 45 and 48) and for a hearing (Docket No. 53) are **DENIED**,

3) The Court will take under advisement plaintiff's motion for injunctive relief to preserve video footage (Docket No. 64) and defendants are directed to answer the questions posed in the memorandum within 30 days of this order, and

4) Defendants' motions for an extension of time to respond to the complaint (Docket No. 51) and exemption from local rule 7.1(a)(2) (Docket No. 52) are **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated May 26, 2017